UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PAULA M. MARTIN                          :
                                         :
            v.                           :        C.A. No. 07-388A
                                         :
MICHAEL J. ASTRUE,                       :
Commissioner of the Social Security      :
Administration                           :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on October 15, 2007 seeking to reverse the decision of the Commissioner.  On May 30, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 8).  On August 4, 2008, the Commissioner filed a Motion for Order Affirming the Decision of the Commissioner.  (Document No. 13).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be GRANTED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 9, 2001 alleging disability as of January 26, 2001. (Tr. 57-59). Plaintiff was approved for benefits on May 1, 2001 with an onset date of January 26, 2001. (Tr. 26). Following a disability review dated August 19, 2004, Plaintiff's disability benefits were stopped because of improved health. (Tr. 27). On May 15, 2005, a State disability hearings officer agreed that Plaintiff was no longer disabled. (Tr. 35-42). Plaintiff appealed that determination and requested a hearing. (Tr. 32, 43). A hearing was held on August 9, 2006 before Administrative Law Judge Barbara F. Gibbs (the "ALJ"), at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 301-356).

On November 14, 2006, the ALJ issued a decision unfavorable to Plaintiff. The Appeals Council denied Plaintiff's request for review on August 17, 2007. (Tr. 5-7). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that there was insufficient evidence for the ALJ to determine medical improvement and that the ALJ should have utilized a medical expert. Plaintiff also argues that the ALJ ignored evidence favorable to her. Plaintiff further argues that the ALJ failed to properly evaluate her subjective complaints.

The Commissioner disputes Plaintiff's claims and asserts that there is substantial evidence which supports the ALJ's conclusions.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

-4-

findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.  Id.

### IV.     DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the

national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.      Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp.

2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in

the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human

Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them

such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R §404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

**E.    Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.	Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-five years old at the time of the ALJ hearing.  (Tr. 57, 306).  Plaintiff completed high school and has past relevant work as a dialysis technician, wait staff coordinator, waitress and assistant manager of a restaurant.  (Tr. 83, 98).  Plaintiff has polycythemia vera.  In 2001, Plaintiff alleged that her condition caused headaches, fatigue, dizziness, circulation problems in her toes and pain in her toes and left leg.  (Tr. 82).  Plaintiff later alleged in 2004 that "emotionally coping with things" had become difficult and that she still experienced pain from her condition and side effects from both her condition and treatment.  (Tr. 127).

Plaintiff was treated by Dr. Anthony F. Testa, a Hematologist/Oncologist, for her polycythemia vera from January of 2001 through the date of the ALJ's decision.  (Tr. 151-157, 247-272).  Dr. Testa noted at his first evaluation of Plaintiff that she had a platelet count in the range of "approximately 1 mm and white count of 16.8 and hemoglobin 16.4 with normal differential."  (Tr. 152).  In March 2001, Dr. Testa stated that test results were consistent with a diagnosis of polycythemia vera and he arranged for phlebotomies, or blood letting, and treatment with

medications to bring the platelet count down.  (Tr. 151).  He stated that if that did not help,

interferon would be considered, "although this would be more difficult for the patient to tolerate."

Id.  In April 2001, Dr. Testa stated that Plaintiff had polycythemia vera with high platelet count and

symptoms of fatigue, weakness and lower extremity discomfort and required weekly follow-up and

possible treatment with interferon or other medications. (Tr. 153).

        The next record from Dr. Testa was from August 2004.  (Tr. 247).  Plaintiff's diagnosis was

"thrombocytosis with underlying P-vera."  Id.  Her platelet count was 376 and her hematocrit level

("HCT") was 40.6.  Id.  She was noted to have "no  increasing symptoms" and was being treated

with Hydrea (or hydroxyurea).  Id.  (emphasis added).  The same notations were made on October

5, 2004 and November 30, 2004, although at that time Plaintiff's HCT was somewhat elevated at

42.  (Tr. 249, 251).  Plaintiff's HCT was higher still (44.7) in February 2005 – but was down again

to 39.9 in March 2005.  (Tr. 253, 255).  In August 2005, Plaintiff complained of abdominal cramps

and dizziness.  (Tr. 259).  During 2004 and 2005, Plaintiff's platelet count was noted to be in the

300,000-400,000 range.  (Tr. 249-272).  During that time and into 2006, her red blood count was

generally reported as low.  (Ex. 16F).  On November 3, 2005, Dr. Testa noted that Plaintiff was

"doing well. No new complaints. No increasing symptomatology."  (Tr. 264).  (emphasis added).

He repeated that observation in January, March and May 2006.  (Tr. 266, 268, 270).

        In February 2005, Dr. Testa submitted a letter to State Disability Determination Services

which indicated:

                This letter is in regards to Ms. Paula Martin who has been
        followed at my office with an underlying history of thrombocytosis
        and polycythemia vera. The patient has required chemotherapy with
        hydroxyurea to maintain adequate platelet counts. She has been on
        hydroxyurea one gram alternating with 500 mg daily. On this
        regimen, platelet counts have been within the normal range of

> 305,000. White count has been 7,000 with a hemoglobin of 14.8.
> Prior to therapy platelet counts were in the range of approximately
> one million. The patient has had side effects associated with therapy
> including fatigue and at times nausea. She also has at times difficulty
> with pain and discomfort above the toes. (Tr. 156)

From September 2001 to July 2004, Plaintiff was also treated for her polycythemia vera at the Dana-Farber Cancer Institute at Brigham and Women's Hospital in Boston. (Tr. 160-174). A bone marrow biopsy confirmed the presence of polycythemia vera, and Plaintiff was treated with various medications to lower her platelet count, some of which had to be discontinued due to their side effects. (Tr. 173). In April 2002, it was noted that Plaintiff was "doing reasonably well" on the medication Hydrea although she complained of "some mild nausea." (Tr. 169). In August 2002, it was noted that Plaintiff's condition was "relatively well controlled" although at that time she was complaining of leg pain and urinary retention. (Tr. 167). In March 2003, Plaintiff was again noted to be "doing reasonably well" on her medications with lowered platelet count. (Tr. 165). In October 2003, Plaintiff was reporting "no new significant symptoms" except for problems with erythromelalgia in her toes when it gets cold, occasional headaches and susceptibility to bruising. (Tr. 162). In July 2004, Plaintiff's doctor stated that she was "doing quite well with myeloproliferative syndrome" and her medication regimen was continued. (Tr. 160).

For her primary care, Plaintiff treated with Dr. Kim Crawford. (Tr. 200-215, 238-243). In April 2001, Dr. Crawford noted the presence of "what looks like thrombose capillaries in the distal portions of her toes on the left foot" and that "probably this is secondary to her polycythemia vera." (Tr. 205). In March and April 2002, Dr. Crawford noted that Plaintiff was "doing fairly well." (Tr. 203). In August 2002, Plaintiff complained of left leg pain, which Dr. Crawford felt was "a neurogenic type pain." (Tr. 202). In September 2002, Dr. Crawford referred Plaintiff to Dr. Gary

-13-

L'Europa, a Neurologist, for her leg pain. A nerve conduction study was performed on November 7, 2002 by Dr. L'Europa which did not show either lumbosacral radiculopathy or entrapment neuropathy. (Tr. 217). The next record from Dr. Crawford was from November 2004 at which time Plaintiff was complaining she was "anxious, aggravated, easily irritated, not sleeping and has been going on for a month or so." (Tr. 201). Dr. Crawford felt she had "stress related depression" and started her on an antidepressant. Id. In February 2005, Plaintiff again complained of increased anxiety with difficulty sleeping and focusing. (Tr. 200). In August 2005, Plaintiff reported that she had been experiencing facial numbness. (Tr. 240). Dr. Crawford referred her for an MRI which showed "nonspecific white matter" and the presence of "demyelination either secondary to ischemic changes or chronic demyelinating disease cannot entirely be excluded." (Tr. 216).

In July 2006, Plaintiff began treating at Lincoln Psychiatric Services. (Tr. 292). She reported "on and off" symptoms of depression since 2001. Id. She also described waking up with night sweats and decreased energy "due to meds." (Tr. 294). She was diagnosed with major depressive disorder and her global assessment of functioning ("GAF") was rated at 55. (Tr. 295). At her subsequent visits, Plaintiff continued to complain of poor sleep. (Tr. 296-298). On August 18, 2006, her mood showed improvement, and her GAF was improved at 65. (Tr. 299).

## A.   Medical Improvement

A claimant's continued entitlement to disability benefits must be reviewed periodically. See 20 C.F.R. § 404.1594(a) (DIB) and § 416.994(a) (SSI); see also 20 C.F.R. § 404.1589 ("After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for disability cash benefits."). This evaluation is called a "continuing disability review." 20 C.F.R. § 404.1589. Termination of benefits is governed by 42 U.S.C. § 423(f), see

-14-

Cogswell v. Barnhart, No. Civ. 04-171-P-S, 2005 WL 767171, at *1 (D. Me. Mar. 14, 2005), which

"provides in relevant part that benefits may be discontinued only if (1) there is substantial evidence

to support a finding of medical improvement related to an individual's ability to work and (2) the

individual is now able to engage in substantial gainful activity," Santiago v. Barnhart, 386 F. Supp.

2d 20, 22 (D.P.R. 2005); see also 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a).

> Under the regulations, medical improvement is defined as 'any
> decrease in the medical severity' of an impairment, and any such
> decrease 'must be based on changes in the symptoms, signs and/or
> laboratory findings' associated with the claimant's impairment. See
> 20 C.F.R. § 404.1594(b)(1). To find medical improvement, the
> Commissioner must compare the prior and current medical evidence
> to determine whether there have been any such changes in the signs,
> symptoms and laboratory findings associated with the claimant's
> impairment. Id. (b)(7), (c)(1).

Rice v. Chater, 86 F.3d 1, 2 (1st Cir. 1996). "Medical improvement is related to [a claimant's] ability

to work if there has been a decrease in the severity, as defined in paragraph (b)(1) of this section,

of the impairment(s) present at the time of the most recent favorable medical decision [i.e., the

comparison point decision] and an increase in [the claimant's] functional capacity to do basic work

activities as discussed in paragraph (b)(4) of this section." 20 C.F.R. § 404.1594(b)(3). "The

residual functional capacity assessment used in making the most recent favorable medical decision

will be compared to the residual functional capacity assessment based on current evidence in order

to determine if [the claimant's] functional capacity to do basic work activities has increased." 20

C.F.R. § 404.1594(c)(ii). In addition:

> A determination that medical improvement related to [a claimant's]
> ability to do work has occurred does not, necessarily, mean that [the
> claimant's] disability will be found to have ended unless it is also

shown that [the claimant is] currently able to engage in substantial
gainful activity as discussed in paragraph (b)(5) of this section.

20 C.F.R. § 404.1594(b)(3). Vocational factors are considered at this stage of the review. See 20

C.F.R. § 404.1594(b)(5). Any determination made under 42 U.S.C. § 423(f) "shall be made on the

basis of the weight of the evidence and on a neutral basis with regard to the individual's condition,

without any initial inference as to the presence or absence of disability being drawn from the fact

that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f).

**B.      The ALJ's Medical Improvement Finding is Not Supported by the Record**

Plaintiff had a history of full-time employment until early 2001 when she was diagnosed with

polycythemia vera. (Ex. 4E). Plaintiff applied for DIB on April 9, 2001. (Tr. 57). On May 1, 2001,

Dr. Bernardo, a DDS medical consultant, opined that Plaintiff's condition met listing 7.09. (Ex. 2F).

Although a good portion of Dr. Bernardo's written notes are illegible (Tr. 159), he finds that

Plaintiff's complaints of fatigue, pain and dizziness are supported by the medical records. Id. He

concluded that Plaintiff "would appear to meet 7.09 with a one to two year diary to assess the effects

of her treatments." Id. [1] Thus, Plaintiff was awarded DIB.

Listing 7.09 covers polycythemia vera (with erythrocytosis, splenomegaly, and leukocytosis

or thrombocytosis). 20 C.F.R. Part 404, Subpart P, Appendix 1 (Section 7.09). It requires

evaluation of "the resulting impairment under the criteria for the affected body system." Id. The

ALJ concluded that Plaintiff no longer met Listing 7.09 as of August 1, 2004 "because [her]

symptoms no longer met the requisite objective criteria." (Tr. 16). The ALJ primarily focused on

---

[1] The Commissioner misrepresents Dr. Bernardo's conclusion. In his brief, the Commissioner states that Dr. Bernardo requested reevaluation in the future "due to expected improvement in her condition." (Document No. 13 at p. 2). Dr. Bernardo never stated (or even suggested) that Plaintiff's condition was "expected" to improve. He simply noted in a neutral fashion that the case should be reviewed in one to two years "to assess the effects of her treatment." (Tr. 159). In other words, improvement was possible but not necessarily expected.

the fact that Plaintiff's medication treatment on hydroxyurea was successful in reducing her platelet counts to within a normal range. (Tr. 16-17). The ALJ also noted the absence of "new" complaints or symptoms reflected in the more recent medical records.

In making her medical improvement determination and RFC assessment, the ALJ placed significant weight on the reports of two DDS non-examining consultants. (Tr. 20). The first consultant (Ex. 4F) concluded on August 17, 2004 that Plaintiff had shown medical improvement from 2001 to 2004 but did not specifically answer the question as to whether Plaintiff's condition continued to meet or equal Listing 7.09. (Tr. at 185 – Questions III A and C). He also noted that there was no treating or examining source statement regarding Plaintiff's physical capacities on file. (Tr. 183). The second consultant (Ex. 8F) found on December 10, 2004 medical improvement and that Plaintiff no longer met Listing 7.09. (Tr. 190-191). He did not, however, provide a detailed explanation of his reasoning and also noted the absence of treating or examining source statements regarding Plaintiff's physical capacities. (Tr. 198).

Subsequently, on February 25, 2005, Plaintiff's treating hematologist, Dr. Testa, noted that Plaintiff has "required chemotherapy with hydroxyurea to maintain adequate platelet counts" and has had "side effects associated with therapy including fatigue and at times nausea." (Tr. 156). Dr. Testa also reported Plaintiff's "difficulty with pain and discomfort above the toes." Id. Earlier, on July 18, 2004, Dr. Testa noted lower extremity discomfort and an elevated platelet count of "442k." (Tr. 155).

The ALJ failed to explicitly evaluate (or even discuss) Dr. Testa's 2005 report and such report was never reviewed by the non-examining medical consultants or a medical expert. In other words, it was ignored. Further, in connection with reviewing Dr. Testa's treatment records, the ALJ

-17-

notes his reports of "no increasing symptoms" and "no new complaints." (Tr. 19). While the absence of "increasing" or "new" problems may suggest a stabilizing of Plaintiff's condition, it does not necessarily suggest an improvement in, or absence of, symptoms. In fact, in early 2005, Dr. Testa identified the existence of symptoms and side effects from Plaintiff's condition and her treatment. (Tr. 156). The ALJ should have evaluated this evidence and, if appropriate, it should also have been reviewed by a pre-hearing medical consultant or a testifying medical expert.

The ALJ also relies on the fact that "nowhere in Dr. Testa's notes does he suggest that [Plaintiff] is disabled by her condition." (Tr. 19). Plaintiff saw Dr. Testa briefly in early 2001 when she was diagnosed. (Tr. 151-153). She was then treated at the Dana-Farber Cancer Institute (Ex. 3F) and in July 2004 was referred back to Dr. Testa for monitoring of her blood counts. (Tr. 160-161). Plaintiff saw Dr. Testa for this purpose every two months between August 2004 and July 2006. (Ex. 16F). Dr. Testa's records simply report on Plaintiff's blood work and the lack of new or increasing symptoms. Id. While Dr. Testa does not state or suggest that Plaintiff is disabled, he was not asked the question and would have no reason to report on that topic in notes of blood work evaluations at a time when Plaintiff was not working and collecting DIB. If the ALJ wanted Dr. Testa's opinion on disability, she should have asked him to complete a physical RFC assessment form.

In addition to ignoring Dr. Testa's 2005 opinion (Tr. 156), the ALJ also failed to properly evaluate the side effects of Plaintiff's treatment regimen. The ALJ discounted Plaintiff's testimony as to side effects and other symptoms because "[t]here is little to no evidence in the medical record of complaints regarding these alleged impairments." (Tr. 19). However, as noted above, Dr. Testa identified the existence of lower extremity discomfort in July 2004 and the presence of side effects

associated with therapy, as well as pain/discomfort, in February 2005. (Tr. 155-156). This evidence contradicts the ALJ's statement regarding the absence of support for Plaintiff's complaints in the medical record.

While the ultimate outcome may not change, the ALJ shall, on remand, consider and explicitly evaluate the medical evidence discussed above and, if appropriate, supplement the record with additional medical, consultative or expert evidence. The ALJ shall also revisit the issues of whether Plaintiff presently meets Listing 7.09 and, if not, the existence and extent of Plaintiff's side effects from treatment and continuing symptomology and their impact, if any, on her physical RFC.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be GRANTED. Final judgment shall enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 2, 2008